**SO ORDERED.**

**SIGNED this 23rd day of December, 2015.**



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ES2 Sports & Leisure, LLC, ) | |
| (d/b/a "Proehlific Club at Forest Oaks"), ) | Case No. 14-10412 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| Charles M. Ivey, III, ) | |
| Chapter 7 Trustee for the Estate of ) | |
| ES2 Sports & Leisure, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adv. Pro. No. 14-02035 |
| ) | |
| ES2, LLC (d/b/a "Es2 Services and ) | |
| Solutions"), Matthew J. Birely ) | |
| (a/k/a "Matt Birely"), David J. Hess, ) | |
| and George Hess, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM OPINION GRANTING PARTIAL SUMMARY JUDGMENT

This adversary proceeding is before the Court on the Motion for Summary Judgment as

to Defendants Matthew Birely and ES2, LLC (the "Motion for Summary Judgment") [Doc. #62]

filed by Charles M. Ivey, III (the "Plaintiff") on July 9, 2015.  Plaintiff asks this Court to enter

summary judgment against Matthew Birely and ES2, LLC (collectively, the "Defendants").[1]  For

the reasons stated herein, the Court will grant summary judgment in part on Counts I and IV and

deny summary judgment on Counts II, III and V.

## Facts[2]

On April 15, 2014, ES2 Sports and Leisure, LLC (the "Debtor") filed a voluntary petition

for relief under Chapter 7 of the United States Bankruptcy Code.  Plaintiff is the duly appointed

and acting Trustee in this matter.  Defendant ES2, LLC is a North Carolina LLC with its

principal place of business in Wake County, North Carolina, and is the parent company of the

Debtor.  Amended Complaint, ¶¶ 5-6.  Defendant Matthew Birely is a citizen and resident of the

State of North Carolina and is a member and officer/director of both the Debtor and Defendant

ES2.  Id. at ¶ 31.

The Debtor's business was the management of business operations of Forest Oaks

Country Club in Greensboro, North Carolina.  Id. at ¶ 13.  The Debtor, through negotiations

conducted in part by Matthew Birely, entered into an agreement (the "Lease Agreement") to

sublease the restaurant and grill area to Isabella's, Inc. ("Isabella's), owned by Mr. and Mrs.

---

[1] The Amended Complaint [Doc. #7] also asserts claims against David Hess and George Hess.  Plaintiff and George Hess have entered into a settlement (Order Granting Motion for Settlement Agreement [Doc. #68]) in which all claims are being withdrawn against him.  David Hess has filed for bankruptcy in the Eastern District of North Carolina and all claims against him are stayed.

[2] This adversary proceeding was commenced by the Plaintiff on December 2, 2014.  All parties were properly served.  Defendants did not respond to the Complaint or the Amended Complaint.  On January 16, 2015, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered an Entry of Default [Doc. #15] against Defendant ES2.  On February 20, 2015, the Clerk entered an Entry of Default [Doc. #31] against Defendant Matthew Birely.  "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6).  Therefore, all facts in the Amended Complaint are deemed admitted by the Defendants. See In re Heard, No. 09-95011-MGD, 2010 WL 3397458, at *1 (Bankr. N.D. Ga. June 2, 2010) ("Defendant's default constitutes admissions of the complaint's material facts under Rule 8(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure.").

William and Kathy Dudich ("Tenants").  Id. at ¶ 15.  Pursuant to the Lease Agreement, Isabella's

provided an initial security deposit of $25,000, which was to be held by Defendant ES2 during

the first year of operation.  Amended Complaint, ¶ 16.  In the event of a breach during the first

year, the security deposit, plus interest, was to be transferred to the Debtor.  Id.  On March 28,

2013, the Tenants wrote a check for $25,000.00 made out to Defendant ES2.  Id. at ¶ 18.  The

check was deposited in a BB&T bank account which belonged to Defendant ES2.  Id. at ¶ 19.

Before the end of the first year, Isabella's breached the Lease Agreement, but, contrary to the

terms of the Lease Agreement, the $25,000.00 security deposit (plus interest) was not transferred

to the Debtor.  Amended Complaint, ¶ 21.  At the Section 341 Meeting of Creditors, Defendant

Birely testified that the terms of the Lease Agreement were a "drafting error" and that the money

was not supposed to be held by Defendant ES2.  Id. at ¶ 22.  This statement by Defendant Birely

was false.  Defendant Birely actually had directed the Tenants in writing to make the check out

to Defendant ES2, rather than the Debtor.  See Amended Complaint, Ex. #2.

Defendant ES2 became a creditor of the Debtor no later than September 30, 2013, when

it loaned approximately $41,750.00 to the Debtor.  Amended Complaint, ¶ 26.  By December

2013, the outstanding amount owed by Debtor to Defendant ES2 was approximately

$103,772.33.  Id. at ¶ 27.  In February 2014, Defendant ES2 made an "equity contribution" to the

Debtor in the amount of $155,000.00 which re-classified almost all of the debt owed to ES2 as

an ownership interest in the Debtor.  Id.

**Jurisdiction and Authority**

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28

U.S.C. § 1334, and has statutory authority to hear and determine this proceeding under 28 U.S.C.

§§ 151, 157, and Local Rule 83.11 entered by the United States District Court for the Middle

District of North Carolina. Counts III and IV of the Amended Complaint constitute core proceedings under 28 U.S.C. § 157(b)(2), which this Court may constitutionally hear and determine.

The request to declare that Defendant ES2 is an alter-ego of Defendant Birely, and Counts I, II, and V are matters "related to" the bankruptcy case. Defendants were properly served with the Complaint in this matter, and the Court obtained personal jurisdiction over them. See Fed. R. Bankr. Pro. 7004(b), (d), and (f); and 10 Collier on Bankruptcy ¶ 7004.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing Gonzales v. Miller (In re Tex. Reds, Inc.), 2010 Bankr. LEXIS 1417, at *17020 (Bankr. D.N.M. April 26, 2010) (for the proposition that "personal jurisdiction under [Rule] (f) meets constitutional concerns based on the defendant's contacts with the United States, rather than the state where the bankruptcy court is located.")). The clerk of this Court properly issued a summons on each of the Defendants on December 3, 2014 [Doc. # 3]. Plaintiffs properly and timely served a copy of the summons on each Defendant and filed proof of service on the Defendants on December 8 and 9, 2015, respectively [Doc. #'s 4 and 5]. The summons, which was issued on Official Form B 250B (12/09), expressly and conspicuously provides Defendants notice that, if they fail to appear, their failure will be deemed to be consent to entry of judgment by this Court for the relief demanded in the Complaint. Neither Defendant has appeared or otherwise defended in this adversary proceeding. On January 16, 2015, the Clerk of Court entered default against Defendant ES2. [Doc. # 15]. On February 20, 2015, the Clerk of Court entered default against Defendant Birely. [Doc. # 31.

"'[A]s a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights'—such as the right to a jury—'that dictate the procedures by which civil and criminal matters must be tried.'"

Wellness Intern. Network, Ltd. V. Sharif, ____ U.S. ___, ___, 135 S.Ct. 1932, 1943 (2015)

(quoting Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848-49, 106 S.Ct. 3245,

3245 (1986)).  It is well-settled that the Seventh Amendment's right to a jury trial does not

survive default due to waiver.  See e.g., Benz v. Skiba, Skiba & Glomski, 164 F.R.D. 115, 116-

117 (D. Maine 1995) ("Caselaw dating back to the eighteenth century, however, makes clear that

the constitutional right to jury trial does not survive the entry of default." (and cases cited

therein)).

        As indicated by the Court in Wellness, the right to adjudication before an Article III court

is no less waivable as a fundamental constitutional right than is the right to a jury trial.  Wellness,

___ U.S. at ___, 135 S.Ct. at 1943.  The notice provided on Official Form B 250B (12/09)[3]

served upon the Defendants in this case is sufficient to put properly served defendants on notice

of the need for their consent to entry of judgment by this Court and their right to refuse it.   The

Defendants' failure to respond constituted a waiver of their right to have these claims heard by

an Article III court, and, due to this waiver, the Court therefore has the constitutional authority to

enter judgment on the claims over which it has subject matter jurisdiction, statutory authority,

and personal jurisdiction.  See In re Dierschke, No. 689-60047-12, 1992 W.L. 333904, at *6-7

(N.D. Tex. Feb. 25, 1992) (where defendant defaults, bankruptcy court could enter judgment

because default constituted waiver); aff'd sub nom, Matter of Dierschke, 975 F.2d 181, 185 (5th

Cir. 1992) (affirming judgment, and stating that, even assuming that the defendant had a

---

[3] Official Form B 250B (12/09) provides: "**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT**."

constitutional right to a jury trial, "he waived that right when he purposefully chose not to answer the suit").

## **Standard of Review**

Summary judgment is appropriate under Rule 56 of the Federal Rules Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, a court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994), cert. denied, 513 U.S. 813, 115 S. Ct. 67, 130 L.Ed.2d 24 (1994). The moving party has the burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable inferences must be drawn in favor of the nonmoving party. Celotex, 477 U.S. at 323, 106 S.Ct. 2548.

In this case, the Defendants have failed to respond to this Motion for Summary judgment and default has been entered against the Defendants, but this Court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" Id.

**Discussion**

In the Motion for Summary Judgment, Plaintiff asks this Court to grant summary judgment against the Defendants declaring that Defendant ES2 is the alter-ego of Defendant Birely, and to award, jointly and severally, the amounts prayed for in Count I through V of the Amended Complaint.  In Count I, Plaintiff requests that the Court award actual and nominal damages in the amount of $25,036.00 for unjust enrichment, which Plaintiff requests that the Court treble pursuant to N.C. Gen. Stat. § 75-1.1.  In Count II, in the alternative to Count I, Plaintiff requests that the Court award damages of $25,036.00 for breach of fiduciary duty and aiding abetting breach of fiduciary duty, which Plaintiff requests that the Court treble pursuant to N.C. Gen. Stat. § 75-1.1.  In Count III, Plaintiff requests actual damages in the amount of $94,221.08 for preferential transfers.  In Count IV, Plaintiff requests actual damages in the amount of $8,617.84 for the avoidance of post-petition transfers.  In Count V, Plaintiff requests damages in the amount of $32,571.12 for breach of fiduciary duty, which Plaintiff requests that the Court treble pursuant to N.C. Gen. Stat. § 75-1.1.

**A.  Alter-Ego**

Plaintiff requests that the Court declare that Defendant Birely is the alter-ego of Defendant ES2.  Under North Carolina law, a corporation and its alter-ego are treated as the same entity and so any liability of one will be a liability of the other.  See Alvarez v. Ward, No. 1:11CV03, 2011 WL 7025906, at *3 (W.D.N.C. Oct. 17, 2011) report and recommendation adopted, No. 1:11CV03, 2012 WL 113567 (W.D.N.C. Jan. 13, 2012) (quoting Fischer Inv. Capital, Inc. v. Catawba Dev. Corp., 689 S.E.2d 143, 147 (N.C. Ct. App. 2009)) ("North Carolina law, like Virginia law, treats a corporation and its alter-ego as 'one and the same . . . .'").  "[C]ourts will disregard the corporate form or 'pierce the corporate veil,' and extend

liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." Fischer Inv. Capital, Inc. v. Catawba Dev. Corp., 200 N.C. App. 644, 649, 689 S.E. 2d 143, 147 (2009) (quoting Glenn v. Wagner, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985)). "In North Carolina, what has been commonly referred to as the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.'" Id. "[T]he instrumentality rule allows for the corporate form to be disregarded if 'the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State[.]'" State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 440–41, 666 S.E.2d 107, 113–14 (2008) (quoting Henderson v. Sec. Mortgage & Fin. Co., 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968)).

For Plaintiff to successfully show that Defendant Birely is the alter-ego of Defendant ES2 and pierce the corporate veil under the "instrumentality rule" they must establish three things:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Id. (citing B–W Acceptance Corp. v. Spencer, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)). Factors that are considered with respect to the first element of control include: (1) inadequate capitalization, (2) non-compliance with corporate formalities, (3) complete domination and control of the corporation so that it has no independent identity, and (4) excessive fragmentation of a single enterprise into separate corporations. See East Mkt. St. Square, Inc. v. Tycorp Pizza

IV, Inc., 175 N.C. App. 628, 636, 625 S.E. 2d 191, 198 (2006). It "is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which . . . suggest that the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation." Glenn, 313 N.C. at 458, 329 S.E. 2d at 332.

In this case, the undisputed facts are sufficient to establish for purposes of an uncontested motion for summary judgment that Defendant Birely had control and complete domination of Defendant ES2 in both its finances and business practices. First, Defendant ES2 was inadequately capitalized and had a number of months in which it was either completely insolvent or had extremely thin capitalization.[4] Second, there was a non-compliance with corporate formalities which included a failure to file an annual report with the North Carolina Secretary of State's office for the year of 2014, a failure to maintain a current/active Registered Agent and/or Registered Agent's address with the North Carolina Secretary of State's office, and failure to maintain a current/active business address with the North Carolina Secretary of State's office. Amended Compl. ¶ 33. Finally, Defendant Birely has shown complete domination and control of Defendant ES2 so that it has no independent identity. Defendant Birely was a majority owner of Defendant ES2 as well as an officer and director. Id. On March 25, 2014, a check was issued (Check #3387) to Defendant Birely to pay a personal utility bill owed to the Town of Wake Forest. Id. at Ex. 6. On that same day, another check (Check #3388) was issued to Defendant Birely to pay a student loan owed to Nelnet, Inc. Id. at Ex. 7. The next day, March 26, 2014, a check (Check #3390) was issued to Defendant Birely to pay a personal cable bill owed to

---

[4]Specifically, the ending balance in Defendant ES2's bank account (Bank of America Account 5119) for December 2013 was -$53,144.10. In March 2014, Defendant ES2's bank records show combined assets in the amount of -$7,153.31. In April 2014, total combined assets were in the amount of $29.88. In May 2014, total combined assets were in the amount of -$16.83. Amended Compl. ¶ 33 [Doc. #7]

DirectTV.  Id. at Ex. 8.  Finally, on April 8, 2014, a check (Check #3392) was issued to Defendant Birely to pay for his daughter's preschool.  Id. at Ex. 9.

As shown in greater detail below, this control and domination of Defendant ES2 was used by Defendant Birely to commit wrongs and injustices in contravention of his legal duties. This control and domination also was the proximate cause of the injuries suffered by the Debtor at issue in this case.  Thus, the Court finds that Defendant ES2 is the mere instrumentality of Defendant Birely, that Defendant Birely is the alter-ego of Defendant ES2, and that piercing the corporate veil is appropriate and equitable in this case.

### B.  Count I – Unjust Enrichment

Unjust enrichment is an equitable remedy based on a quasi-contract or a contract implied in law.  See Ron Medlin Const. v. Harris, 364 N.C. 577, 704 S.E. 2d 486, 489 (2010).  A quasi-contract or a contract implied in law is not a contract; instead, it is a remedy "imposed by law to prevent an unjust enrichment."  Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E. 2d 554, 556 (1988).  "If there is a contract between the parties the contract governs the claim and the law will not imply a contract."  Id. (citing Concrete Co. v. Lumber Co., 256 N.C. 709, 124 S.E. 2d 905 (1962)).  Therefore, "a claim for unjust enrichment may not be brought in the face of an express contractual relationship between the parties."  Pan–American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F.Supp. 2d 664, 696 (M.D.N.C. 2011) (citation omitted).

In North Carolina, a prima facie claim for unjust enrichment has five elements.  First, one party must confer a benefit upon the other party.  D.W.H. Painting Co., Inc. v. D.W. Ward Const. Co., Inc., 174 N.C. App. 327, 334, 620 S.E. 2d 887, 893 (2005).  Second, the benefit "must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances."  Id. (quoting Booe v.

<u>Shadrick</u>, 322 N.C. 567, 570, 369 S.E. 2d 554, 556 (1988)) (quotation marks omitted).  Third, the benefit must not be gratuitous.  <u>Id.</u>  Fourth, the benefit must be measurable.  <u>Id.</u>  Last, "the defendant must have consciously accepted the benefit."  <u>Id.</u>

In this case, there was no express contract between the Debtor and Defendant ES2.[5]  A benefit was conferred upon Defendants when Birely retained the initial security deposit from Isabella's of $25,000 that was rightfully payable to the Debtor in the event of a breach.  <u>See</u> Amended Compl. ¶ 21.  This benefit was conferred on the Defendants through Birely's own doing and so was not given officiously by the Debtor.  The benefit is not gratuitous.  There are no facts in the record to support, nor is there any reason to believe, that the Debtor gratuitously gave the security deposit to the Defendants.  The benefit is measurable.  The security deposit that the Defendants retained was worth $25,000 plus interest.  According to the complaint, the federal nominal one-year interest rate applicable at the time of the Restaurant Lease Agreement was approximately 0.14% per annum.  The interest amount using this rate would be approximately $35.00.  Amended Compl. ¶ 40.   The measurable benefit to Defendants then is worth no less than $25,035.00.  This benefit was consciously accepted by the Defendants.  Defendants were aware of the Restaurant Lease Agreement and the duty to transfer the security deposit, plus interest, to the Debtor in the case of a breach by Isabella's.  This breach occurred and Defendants did not transfer the security deposit to the Debtor in violation of the agreement.  <u>See</u> Amended Compl. ¶¶ 20-21.  The failure to transfer in this case acts as a conscious acceptance of the benefit.  Thus, summary judgment is proper in regard to Count I for unjust enrichment, and Defendants are jointly and severally liable in the amount of $25,035.00.

---

[5] The Lease Agreement is between the Debtor and Isabella's and, while Defendant ES2 is mentioned in Article 5 of this contract, they are not a party to the contract and are not expressly bound by it.

**C.  Count II – Breach of Fiduciary Duty/Aiding & Abetting Breach of Fiduciary Duty**

The Plaintiff's claim for breach of fiduciary duty set forth in Count II arises out of the same transaction at issue in Count I for unjust enrichment, and requests the same relief granted by the Court under Count I.  Since the Court fully afforded Plaintiff relief for these injuries under Count I, any relief granted under Count II is unnecessary and duplicative.  Therefore, the Court does not need to reach the issue of breach of fiduciary duty to grant the Plaintiff full relief in this case.[6]

**D.  Count III – Avoidance of Preferential Transfers**

Under 11 U.S.C. § 547(b), the trustee may avoid any transfer of an interest in property – (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made – (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In this case, the Plaintiff relies upon the deemed admitted allegations in the Amended Complaint to satisfy the elements of a preferential transfer.  These allegations fail to establish with sufficient particularity that the transfers were made for, or on account of, an antecedent debt as required by § 547(b)(2).  In order to show that the transfers were made for, or on account of,

---

[6] Plaintiff also has asked that any damages awarded under Count II be trebled pursuant to the Unfair and Deceptive Trade Practices Act.  As discussed more thoroughly in Section IV.G., infra, the actions were not part of the regular business activities and relate to the internal corporate governance of the Debtor and Defendants.  Therefore, the UDTPA in inapplicable and the Plaintiff's request for treble damages under Count II will be denied.

an antecedent debt, the trustee is obligated to demonstrate "facts regarding the nature and amount of the antecedent debt which . . . would render plausible the assertion that a transfer was made for or on account of such antecedent debt.  In re Caremerica, Inc., 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009).  While the factual allegations are generally deemed admitted when default has been entered, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

Plaintiff provides only a conclusory allegation that the transfers were made "for or on account of antecedent debt(s) owed by the Debtor to the Defendant ES2, LLC."  Amended Compl. ¶ 57.  The Plaintiff does not allege that the transfers were made for repayment of the loans set forth in paragraphs 26 and 27 of the Amended Complaint, or as payments on any other particular antecedent debt.   In fact, the Amended Complaint asserts that the debt owed by Debtor to Defendant ES2 as set forth in paragraphs 26 and 27 was substantially reclassified as an ownership interest in February of 2014.  Amended Compl. ¶ 27.  The payments sought to be avoided began on January 14, 2014, but extend regularly through April 15, 2014, two months after the Amended Complaint alleges that most of the debt was reclassified as equity.  Amended Compl. ¶ 57.  No other debts owed by the Debtor to Defendant ES2 are alleged.  Therefore, without more evidence (or unrebutted allegations) of the existence of the amount of any remaining antecedent debt, accompanied by similar unrebutted evidence that the transfers were made in satisfaction of any such antecedent debt, the Court cannot find that the Plaintiff has met his burden in establishing the elements of § 547. Therefore, summary judgment is denied, without prejudice, as to Count III of the Amended Complaint.

### E.  Count IV – Avoidance of Post-petition Transfers

Under 11 U.S.C. § 549(a), the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.  The recovery by a Trustee of post-petition transfers from the bankruptcy estate requires proof of four elements: (1) a transfer, (2) of property of the estate, (3) made after commencement of the case, and (4) that is not authorized under the Bankruptcy Code or by the bankruptcy court.  In re Merry-Go-Round Enterprises, Inc., 400 F.3d 219, 224 (4th Cir. 2005) (citing Hoagland v. Edward Hines Lumber Co. (In re LWMcK Corp.), 196 B.R. 421, 423 (Bankr. S.D. Ill. 1996)); Geekie v. Watson (In re Watson), 65 B.R. 9, 11 (Bankr. C.D. Ill. 1986)).  Under 11 U.S.C. §101(54), a transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property."

In this case, there were two post-petition transfers from the Debtor to Defendant ES2: a transfer in the amount of $8,317.84 made on April 16, 2014, and a transfer in the amount of $300.00 made on April 17, 2014.  Amended Compl. ¶ 66.  The amounts transferred were property of the estate under § 541 as money in bank accounts in existence at the time of the petition.  The Debtor filed its petition for relief on April 14, 2014, so these transfers were made after the commencement of the case.  Finally, these transfers were not authorized under the Bankruptcy Code or by this Court.  Therefore, summary judgment will be granted as to Count IV of the Amended Complaint.  The post-petition transfers may be avoided and Defendants are held to be jointly and severally liable to the bankruptcy estate in the amount of $8,617.84.

### F.  Count V – Breach of Fiduciary Duty

"In North Carolina, the directors of a corporation generally owe a fiduciary duty to the corporation, and when it is alleged that the directors have breached this duty, only the corporation may sue, not a creditor or a shareholder." In re Bostic Const., Inc., 435 B.R. 46, 61 (Bankr. M.D.N.C. 2010) (citing Keener Lumber Co. v. Perry, 149 N.C.App. 19, 560 S.E.2d 817, 822 (2002)).  A director is required to discharge his duties as a director (1) in good faith, (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and (3) in a manner he reasonably believes to be in the best interests of the corporation. N.C. Gen.Stat. § 55–8–30(a).  "A director stands in a fiduciary relationship to the corporation and may not use his position of trust to further his private interests." In re Brokers, Inc., 363 B.R. 458, 474 (Bankr. M.D.N.C. 2007).  Furthermore, directors of a corporation are not shielded by the business judgment rule when the directors have engaged in self-dealing or other instances of bad faith.  See id. at 473 (compiling cases).

"The general rule is that directors and officers of a corporation do not owe a fiduciary duty to the corporation's creditors." In re Maxx Race Cards, Inc., 266 B.R. 74, 78 (Bankr. W.D.N.C. 1998) (citing Whitley v. Carolina Clinic, Inc., 118 N.C.App. 523, 455 S.E.2d 896, 899 (N.C. Ct. App. 1995)).  "An exception to the general rule exists in North Carolina when there are circumstances amounting to a winding up or dissolution of the corporation, at that time a fiduciary duty to the creditors comes into existence." Id.  "If the directors and officers continue to operate an insolvent corporation only to recover the amounts owed to them, to the detriment of the corporation's other creditors, North Carolina courts equate that to a winding up or dissolution and find that the directors and officers owe a fiduciary duty to creditors." In re Bostic Const., 435 B.R. at 62.

Plaintiff points to three transfers in the aggregate amount of $32,570.12 which he alleges constitute a breach of fiduciary duty to both the Debtor and the unsecured creditors. See Amended Compl. ¶ 76. The transfers were as follows: (1) $20,000 on December 31, 2013, by check payable to Hess; (2) $6,300 on February 6, 2014, by check payable to Hess; and (3) $6,270.12 on February 5, 2014 by wire to Hess as beneficiary. Id. All three of these transfers were made to or for the benefit of David Hess from the Debtor. See Amended Compl., Ex. 10, 11, and 12. The signature on the checks is illegible, and there is no unrebutted allegation or other evidence demonstrating who signed the checks on behalf of the Debtor. The allegation states that the transfers were "payments and/or dividends," but does not sufficiently allege facts showing that the transfers were distributions under circumstances that would amount to a violation of N.C. Gen. Stat. §§ 57D-4-05 and/or 57D-6-08.

Although the Plaintiff has sufficiently alleged that the Debtor was insolvent no later than August 30, 2013, see Amended Compl. ¶¶ 24 and 25, and this allegation is deemed admitted for purposes of summary judgment, Plaintiff has failed to allege or establish facts necessary to show that Defendant Birely was involved in these transactions or how these specific transactions constituted a breach of any fiduciary duty to the corporation or its creditors. The Amended Complaint generally states that all the named defendants (including Hess) breached their fiduciary duties to the Debtor by improperly comingling funds and accounts belonging to the Debtor. Amended Comp. ¶ 80. Even if these statements were not general and conclusory, there is no allegation as to how those actions were connected to the specific alleged transfers in Count V. The Plaintiff further alleges that the defendants breached their fiduciary duties by failing to monitor, and directly authorize, the issuance of the listed transfers and post-petition transfers alleged in paragraph 76. Amended Compl. ¶¶ 79 and 81. These generalized and conclusory

assertions are insufficient to establish that there is no issue of fact and that Plaintiff is entitled to judgment as a matter of law under Count V.  Therefore, summary judgment is DENIED with respect to Count V of the Amended Complaint.

### G.  Count VII – Unfair and Deceptive Trade Practices

The Unfair and Deceptive Trade Practices Act (UDPTA) prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ."  N.C. Gen. Stat. § 75-1.1(a).  To state a claim for relief under the UDTPA, the plaintiff must demonstrate (1) an unfair or deceptive practice or act (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff.  In re B & K Coastal, LLC, No. 11-08609-8-JRL, 2013 WL 1935300, at *6 (Bankr. E.D.N.C. May 9, 2013) (citing Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)).  "The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 798-99 (E.D.N.C. 2009).  Furthermore, "[s]ome type of egregious or aggravating circumstances must be alleged and proved before the [Act's] provisions may [take effect]."  Dalton v. Camp, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001) (alterations in original).  "Conduct constituting a breach of fiduciary duty . . . is sufficient to support an unfair and deceptive trade practices claim so long as the other elements of the claim are also present."  In re Brokers, Inc., 396 B.R. 146, 161 (Bankr. M.D.N.C. 2008) (citing Spence v. Spaulding & Perkins Ltd., 82 N.C.App. 665, 668, 347 S.E.2d 864, 866 (1986)).

The Plaintiff asks that the damages from Count I, II and V be trebled under the UDPTA.  Even assuming that Plaintiff's claims here meet the standard for "unfair or deceptive" acts and were the proximate cause of injury, the Plaintiff has failed to sufficiently establish that the

actions were "in or affecting commerce" and so the claim for treble damages under Count VII of the Amended Complaint is denied.

Commerce, as defined by the UDPTA, "includes all business activities, however denominated . . . ." N.C. Gen. Stat. § 75-1.1(b). "Business activities" has been defined by the North Carolina Supreme Court as "a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991). "Although commerce is defined broadly under G.S. § 75–1.1(b) . . . the fundamental purpose of G.S. § 75-1.1(b) is to protect the consuming public." Brokers, 396 B.R. at 162. "Typically, claims under G.S. § 75-1.1 involve buyer and seller." Durling v. King, 146 N.C. App. 483, 488, 554 S.E.2d 1, 4 (2001). Furthermore, "[t]o 'affect commerce,' a defendant's allegedly deceptive acts must have a tangible effect on the marketplace." Brokers, 396 B.R. at 162 (citing Esposito v. Talbert & Bright, Inc., 641 S.E.2d 695 (N.C. App. 2007) (upholding a denial of summary judgment when no effect on commerce was alleged beyond an employee's relationship with his employer); Durling v. King, 146 N.C.App. 483, 488–89, 554 S.E.2d 1 (2001); HAJMM v. House of Raeford Farms, 328 N.C. 578, 592–93, 403 S.E.2d 483, 492 (1991) ("Plaintiff must first establish that defendants' conduct was 'in or affecting commerce' before the question of unfairness or deception arises")). "Matters of internal corporate management do not affect commerce as defined by the UDTPA." Id. (citing Wilson v. Blue Ridge Elec. Membership Corp., 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003); A-1 Pavement Marking, LLC v. APMI Corp., No. 07 CVS 3186, 2008 WL 2974103, at *6 (N.C. Super. Aug. 4, 2008) (finding

that plaintiff's accounting misdeeds that deprived defendant of proper bonus payment relate to matters of internal corporate governance, which are insufficient to sustain a UDTPA claim)).

Beyond the conclusory allegations that the Defendants' actions were in or affected commerce, Plaintiff has failed to put forth any evidence establishing how the actions taken were in or affected commerce or the marketplace.  With the facts before the Court, it appears that the actions by the Defendants were not part of the regular business activities of the Defendants and instead relate to internal corporate affairs.  This type of activity is outside the purview of the UDTPA.  The business of the Defendants and Debtor was the management of business operations of a country club.  Count I and II of the Amended Complaint relate to the wrongful retention of a security deposit by the Debtor's insiders.  Count V involves wrongful payments being made from the business to one of the owner/members.  These actions were not part of the regular, day-to-day business activities of the Defendants and so they are not "in or affecting commerce" as required by the UDTPA.  Furthermore, these are actions which relate to internal corporate governance and affairs which have been found to not be "in or affecting commerce." Therefore, summary judgment is DENIED as to Count VII of the Amended Complaint.

## Conclusion

For the reasons stated herein, the Court will enter its ORDER:

1)    GRANTING partial summary judgment in favor of Plaintiff and against Defendants, jointly and severally, with respect to Count I of the Amended Complaint in the amount of $25,035.00;

2)    GRANTING partial summary judgment in favor of Plaintiff and against Defendants, jointly and severally, with respect to Count IV in the amount of $8,617.84;

3)    DENYING Summary Judgment with respect to Counts II, III, V, and VII; and

4)      Scheduling a status conference in this adversary proceeding to consider and establish the procedure for moving this adversary proceeding to final resolution.

[End of Document]